# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

ROGER W. PECKENPAUGH                                    PLAINTIFF

V.                 NO. 1:18CV00079 BSM-JTR

ANDREW SAUL,
**Commissioner of Social Security Administration**[1]        DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States Chief District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I.  Introduction:**

Plaintiff, Roger W. Peckenpaugh ("Peckenpaugh"), applied for disability benefits on April 29, 2014, alleging disability beginning on April 22, 2008.[2] (Tr. at

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] Peckenpaugh initiated a prior application for benefits that was ultimately denied on January 20, 2012. (Tr. at 15). The ALJ in the instant case did not find cause to reopen that claim, so he explained that the relevant time-period for the current application runs from January 21, 2012 (the day after the prior case closed) through June 30, 2016 (Peckenpaugh's date last insured). *Id.*

15). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application on April 26, 2017. (Tr. at 176-196). The Appeals Council reviewed the claim and, on December 13, 2017, it remanded the case for another hearing, issuing the following instructions:

> 1) Proffer Exhibits 12F, 13F, 14F, 15F, 16F, and 17F;[3]
> 2) Further evaluate the mental impairments with evidentiary findings and appropriate rationale;
> 3) Give additional consideration to Maximum Residual Functional Capacity with evidentiary support for limitations, explaining the weight given to opinion evidence and evaluating non-treating source opinions; and
> 4) Expand the record if warranted, incorporating limitations established in the record into the Maximum Residual Functional Capacity and have the vocational expert identity jobs and resolve any conflict.

(Tr. at 15, 197-200).

A subsequent hearing was held on April 2, 2018, after which the ALJ denied the claim for benefits. (Tr. at 15, 29). The Appeals Council denied Peckenpaugh's request for review on August 24, 2018. (Tr. at 1-6). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Peckenpaugh has filed a Complaint seeking judicial review from this Court.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

---

[3] The Appeals Council determined that Exhibits 12F-17F had not been submitted by Peckenpaugh or his attorney, and that the ALJ had not forwarded same to Peckenpaugh, which was error. (Tr. at 199). The current ALJ *did* proffer the exhibits to Peckenpaugh. (Tr. at 476).

## II. The Commissioner's Decision:

The ALJ found that Peckenpaugh had not engaged in substantial gainful activity during the period from his alleged onset date of January 21, 2012 through his date last insured of June 30, 2016 (Tr. at 18). At Step Two, the ALJ found that Peckenpaugh has the following severe impairments: degenerative disc disease of the lumbar spine and two surgeries, irritable bowel syndrome, chronic pain syndrome, dysthymic disorder, anxiety disorder, and post-traumatic stress disorder. *Id*.

After finding that Peckenpaugh's impairments did not meet or equal a listed impairment (Tr. at 18), the ALJ determined that Peckenpaugh had the residual functional capacity ("RFC") to perform the full range of sedentary work, except that: (1) he should avoid exposure to hazards such as moving mechanical parts of equipment, tools, or machinery, and avoid electrical shock and unprotected heights; (2) he can understand, remember, and carry out simple job instructions; (3) he can make decisions and judgments in simple work-related situations; (4) he can occasionally respond appropriately to co-workers and supervisors, and incidental contact is not required to perform the work; (5) he should not perform work where interaction with the public is required; and (6) he can respond appropriately to minor changes in the usual work routine. (Tr. at 20).

The ALJ found that, based on his RFC, Peckenpaugh was unable to perform any past relevant work. (Tr. at 27). At Step Five, the ALJ relied on the testimony of

a Vocational Expert ("VE") to find that, based on Peckenpaugh's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, including work as an addresser and a document preparer. (Tr. at 29). Thus, the ALJ found that Peckenpaugh was not disabled. *Id*.

## III. Discussion:

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in

the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Peckenpaugh's Arguments on Appeal

Peckenpaugh contends that substantial evidence does not support the ALJ's decision to deny benefits. He makes only one argument: that the ALJ did not properly weigh the medical opinions with respect to mental impairments. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Peckenpaugh sought mental health treatment in Nebraska a handful of times in 2013. But at two visits that year, he had mostly normal mental status examinations with normal speech, judgment, and insight. (Tr. at 563-569). Normal examination findings are not indicative of disabling conditions. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). The provider also attributed some of Peckenpaugh's issues to not having much structure in his day. (Tr. at 569). While Peckenpaugh did treat his mental health impairments, he had long gaps in treatment. Also, the Court notes that he missed three state-ordered consultative examination appointments, and he missed 15 psychiatric appointments from 2012 through 2015. (Tr. at 83, 565-620, 862-882). The failure to seek regular and continuing treatment contradicts allegations of

disability. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997). Peckenpaugh admitted in February 2014 that he had stopped seeing his psychiatrist. (Tr. at 537). Furthermore, Peckenpaugh was occasionally non-compliant with his medication, even though he stated that he was better when he was taking it. (Tr. at 564, 755, 795-798, 853, 881, 887). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

While Peckenpaugh demonstrated some anger management issues, his problems were largely situational, related to home life. (Doc. No. 10 at 3-4). Moreover, at most of his mental health appointments, he had grossly normal mental status examinations. (Tr. at 542, 560, 575, 620, 788, 848, 853).

Dr. Samuel Hester, Ph.D., examined Peckenpaugh on March 16, 2017. (Tr. at 735-741). He did not review any records, but conducted a thorough examination and listened to Peckenpaugh's subjective complaints. He found that Peckenpaugh could perform most daily activities autonomously, could communicate in an intelligent manner, could cope with mental demands of work tasks, could concentrate on basic tasks, and could complete work in an acceptable timeframe. (Tr. at 741). Dr. Hester then filled out a check box form for residual functional capacity. He found mostly mild limitations in understanding and judgment, and moderate limitations in

6

interactions with others. (Tr. at 743-744). In only one area did Dr. Hester find a marked limitation: in Peckenpaugh's ability to interact appropriately with supervisors (which limitation was addressed in the RFC). (Tr. at 744).

Peckenpaugh asserts that the ALJ should have given Dr. Hester's opinion more weight, and that the one marked limitation translated to total disability. It is the ALJ's function to review all of the medical evidence and resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). The interpretation of a physician's findings is a factual matter left to the ALJ's authority. *See Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). The ALJ gave Dr. Hester's opinion little weight, noting the opinion was inconsistent with normal mental status examinations. (Tr. at 25). The ALJ pointed out that the opinion was largely based on subjective complaints and not medical records. *Id*. The ALJ also compared Dr. Hester's opinion to those of the state-agency reviewing physicians, who found moderate limitations in work activities (similar to Dr. Hester's) but no marked limitations. (Tr. at 155, 172).

Even though the ALJ gave Dr. Hester's opinion little weight, it is clear he considered it, because the RFC is for simple work, which correlates closely with Dr. Hester's findings. (Tr. at 142). It included limitations on personal interactions at

7

work, just like Dr. Hester suggested. The first ALJ gave a very short analysis of Dr. Hester's opinion, which troubled the Appeals Council: here the ALJ provided a detailed summary, including specific RFC restrictions, and he gave good reasons for giving the opinion little weight. (Tr. at 187-188); *see Ingram v. Charter*, 107 F. 3d 598, 602 (8th Cir. 1997)(an ALJ must give good reasons for rejecting a treating or examining physician's opinion). Dr. Hester's opinion was not fully consistent with the record, including Peckenpaugh's non-compliance, missed appointments, improvement with medication, and mostly normal mental status exams. Medical opinions do not control in the face of other credible evidence in the record that detracts from that opinion. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010). Moreover, even if the ALJ had given Dr. Hester's opinion more weight, the RFC would not have differed by much at all, because Dr. Hester did not suggest disabling conditions. Hester assigned only one marked limitation out of ten possible areas, which is not consistent with a more restrictive RFC.

Finally, the Appeals Council directed that this ALJ expand the record if necessary. In this case, the relevant time-period ended in 2016, so new consultative examinations would have been unlikely to enhance the opinions already in the file. As well, the medical evidence and available medical opinions were consistent, and the RFC was based on all evidence in the record as a whole. Further development of

the record was unwarranted.

## IV. **Conclusion:**

There is substantial evidence to support the Commissioner's decision that Peckenpaugh was not disabled. The ALJ properly weighed the medical opinions and he based his decision on a fully developed record.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that the case be DISMISSED, with prejudice.

DATED this 30th day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE